UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY REINARTZ,

       Plaintiff,

v.                                    Case No. 1:18-cv-268

                                    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

       Plaintiff alleged a disability onset date of January 28, 2014. PageID.196. Plaintiff identified her disabling conditions as recovery from heart surgeries, brain injury ("due to death 5 minutes"), Lance-Adams syndrome/myoclonus jerks, and depression. PageID.200. Prior to applying for DIB, plaintiff completed two years of college, and had past employment as a production planner, production superintendent, and payroll clerk. PageID.45. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 24, 2017. PageID.34-46. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 28, 2014, and met the insured status requirements of the Social Security Act through December 31, 2018. PageID.36.

At the second step, the ALJ found that plaintiff had severe impairments of: Lance Adams myoclonus; right foot stress fracture; constrictive pericarditis; hypertension; obstructive sleep apnea; history of tricuspid heart valve replacement; cerebrovascular accident; depression and anxiety; and obesity. PageID.36. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally climbing ramps and stairs, but no climbing ladders, ropes and scaffolds; occasionally balancing, stooping, kneeling, crouching, and crawling; occasional fingering bilaterally; and occasional oral communication. The claimant is able to comprehend, retain, and execute simple, routine and repetitive tasks.

PageID.39. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.45.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.45-46. Specifically, the ALJ found that plaintiff could perform unskilled, light work in the national economy such as custodian (623,000 jobs) (light work), surveillance systems monitor (17,000 jobs) (sedentary work), and inspector (13,000 jobs) (sedentary work). PageID.46. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 28, 2014 (the alleged onset date) through February 24, 2017 (the date of the decision). PageID.46.

### III.   DISCUSSION

Plaintiff set forth two issues on appeal:

**A. Contrary to law, the ALJ made his own independent findings regarding plaintiff's mental impairments.**

The ALJ found that plaintiff's severe impairments included "depression and anxiety" (PageID.36) and that due to these non-exertional impairments, plaintiff is able to comprehend, retain, and execute only "simple, routine and repetitive tasks" (PageID.39). Plaintiff contends that the ALJ made independent medical findings with respect to the limitations caused by the depression and anxiety.

Plaintiff identified depression as one of her medical conditions. PageID.200. The ALJ addressed the treatment of plaintiff's mental conditions by three medical providers, i.e., Dr. Lawlor, PA Phillips, and Dr. Ross.

The ALJ addressed Dr. Lawlor's treatment as follows:

> Regarding the claimant's mental impairments, the record documents minimal treatment limited to medication management by a primary care provider (Ex. 20F/14). She testified to recent counseling, but the objective evidence throughout most of the record documents normal mood and affect, behavior, judgment, and thought content (Ex. 9F/13, 50; 14F/5, 11; 18F/5-18; 20F/29; 21F/420). The claimant's providers regularly note her to be cooperative and pleasant (Ex. 11F/19; 15F/138; 17F/1, 26). In September 2016, the claimant reported some issues with depression and anxiety, but John Lawlor, MD, the claimant's primary care provider, documented no significant findings (Ex. 20F/26). He adjusted the claimant's medications and at the following visit in October 2016, he noted the claimant was less weepy, but still anxious (Ex. 20F/28). He documented normal psychiatric findings and continued the claimant on her current medications (Ex. 20F/29-30). The evidence does not show the claimant's depression and anxiety caused such symptoms that she would be unable to comprehend, retain, and execute simple, routine and repetitive tasks.

PageID.42.

The ALJ addressed the opinion evidence of plaintiff's treating neurology provider, Kelley Phillips, PA-C, in pertinent part as follows:

> In addition to the statements regarding the claimant's physical functioning, Ms. Phillips completed a mental residual functional capacity assessment form in October 2016 and indicated the claimant is markedly limited in most areas of

5

> mental functioning (Ex. 23F/l). Aside from the marked limitations in almost all areas of functioning, Ms. Phillips opined the claimant has moderate limitations with carrying out very short and simple instructions, sustaining an ordinary routine without special supervision, interacting appropriately with the public, and asking simple questions or requesting assistance (Ex. 23F/1-2). Ms. Phillip's rational [sic] is limited to describing the claimant's ongoing issues with cognitive and speech function as well as medication side effects of cognitive slowing and sedation due to the medications she takes for myoclonus (Ex. 23F/3). *She further indicates the claimant's cognitive difficulties primarily relate to retention of information and following multi-step commands. Lastly, she states the claimant's anxiety affects her ability to interact socially. However, she failed to note any significant findings in her treatment notes that would support the extent of limitation opined in this form (Ex. l0F).*

PageID.43-44 (emphasis added).

The ALJ also addressed the opinion of plaintiff's psychologist, Dr. Ross:

> In December 2016, treating psychologist, Candace Ross, PhD, provided a letter detailing her treatment of the claimant over four sessions and notes the claimant is adjusting to permanent impairment, becoming a mother, and not being able to return to her work (Ex. 25F/ l). Ms. Ross has failed to identify the reason the claimant is not able to return to work and has had limited interaction with the claimant. Her vague statement provides little insight into the claimant's functioning and her maximum capacity for work related activities. The statement is given little weight.

PageID.44.

In addition, the ALJ found that plaintiff's activities of daily living were not consistent with the alleged disabling limitations.

> She is able to attend to her personal care independently, prepare meals, help her child with homework, perform household chores, drive a car, manage finances and shop in stores (Ex. 3E/2-4; 8E/4-6; Testimony). The claimant is able to care for a three-year-old child independently. Caring for young children can be quite demanding both physically and emotionally without any particular assistance. The claimant is able to drive a car and testified she drives five days a week to go grocery shopping, to daycare, or to pick up her son from school.

PageID.42.

The question presented is whether the ALJ's RFC finding with respect to plaintiff's mental impairments is supported by substantial evidence. Plaintiff contends that it is not supported

6

by substantial evidence because the ALJ made his own independent medical findings with respect to the limitations caused by her depression and anxiety. "[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks omitted). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 439 (6th Cir. 2010).

> [T]he ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence. As the Commissioner points out, the Commissioner has final responsibility for deciding an individual's RFC, SSR 96–5p, 1996 WL 374183 (July 2, 1996), and to require the ALJ to base her RFC finding on a physician's opinion, "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id*.

*Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013).

However, "the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006). "[W]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his or her own lay medical opinion for that of a treating or examining doctor." *Smiley v. Commissioner of Social Security*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (internal quotation marks and brackets omitted). *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (observing that "[t]he Commissioner's determination must be based on

testimony and medical evidence in the record" and that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

Here, the Court concludes that the ALJ did not "succumb" to that temptation. The medical record contains precious little information with respect to plaintiff's mental impairments. Dr. Ross' cryptic letter from December 2016 identified two psychological problems, depression and anxiety. PageID.1846. PA Phillips identified anxiety in plaintiff's mental RFC from October 2016, and noted that plaintiff's cognitive difficulties were primarily related to retention of information and following multi-step commands, and that her "anxiety issues" affected plaintiff's ability to interact socially. PageID.1843-1844. The ALJ addressed these issues by limiting plaintiff to work which involved only occasional oral communication and required only the ability "to comprehend, retain, and execute simple, routine and repetitive tasks." PageID.39. These limitations were supported by PA Phillips' opinion and other evidence of record as discussed by the ALJ. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ propounded a hypothetical question which was inconsistent with his findings at step three, and which failed specifically to address moderate limitations in concentration, persistence or pace.**

Plaintiff contends that the ALJ's hypothetical question was flawed. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a vocational expert (VE) in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb*, 368 F.3d at 632; *Varley*, 820 F.2d at 779. The hypothetical question need only include those limitations which the ALJ accepts as credible.

8

*Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Plaintiff contends that the ALJ erred because the hypothetical question failed to incorporate the finding that plaintiff had moderate limitations in concentrating, persisting or maintaining pace. Plaintiff's contention is without merit. The finding referred to by plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04 and 12.06. PageID.37. RFC is a separate determination made at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). Here, the ALJ explicitly addressed this point, stating "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." PageID.38. As the Court observed in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> [T]he ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10. For these reasons, the ALJ did not err in omitting the step three "paragraph B" findings in plaintiff's RFC or the hypothetical question. As discussed in §

II.A., *supra*, the RFC addressed plaintiff's non-exertional limitations. Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 25, 2019 /s/ Ray Kent
United States Magistrate Judge